IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>v.<br><br>COBB COUNTY,<br>GEORGIA<br><br>          Defendant. | Civil Action No.: |

## COMPLAINT

Plaintiff, the United States of America ("United States"), alleges:

1. This action is brought on behalf of the United States to enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). As set forth more fully below, the United States alleges that Defendant Cobb County, Georgia ("Cobb County") through its agent, the Cobb County Fire Department ("CCFD"), has used a written examination and credit check in its hiring process for firefighter positions at CCFD. Through the use of these screening devices, Defendant has engaged in a pattern or practice of employment discrimination against African Americans in its selection procedure for firefighter positions in violation of Title VII.

2. All conditions precedent to the filing of suit have been satisfied.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

4. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because Defendant is located in this judicial district and all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

## PARTIES

5. Plaintiff is the United States of America.

6. Cobb County is a governmental entity and/or political subdivision created pursuant to the laws of the state of Georgia.

7. Cobb County is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. The United States, through the United States Department of Justice, has conducted an investigation of the policies and practices of Cobb County with respect to its screening and selection of candidates for the firefighter position at CCFD and the discriminatory effect of such practices on African-American candidates. The Department of Justice has notified Cobb County of that investigation and of the United States' determination.

## FACTUAL ALLEGATIONS

A.     *CCFD's Firefighter Selection Process*

9.     Cobb County maintains the CCFD and, through it, employs firefighters who, among other things, are responsible for providing fire, rescue, and emergency services in Cobb County.

10.    Cobb County is responsible for the recruitment and hiring of CCFD firefighters.

11.    Cobb County is responsible for establishing the terms, conditions, and other practices that bear upon the selection and employment of CCFD firefighters.

12.    Since at least 2016, CCFD has used a multi-step process to select firefighters. Among other screening devices, this multi-step hiring process has included the use of scores from a written examination and also the use of a credit check.

13.    As of October 6, 2021, CCFD employed approximately 352 individuals at the firefighter rank: 275 of these firefighters (78.1%) are White, while 46 of these firefighters (13.1%) are African American.

14.    Between 2016 and 2020, approximately 2,075 Whites and 1,974 African-Americans applied for firefighter positions at CCFD. Of these 4,049 applicants, 51.2% are White and 48.8% are African-American.

15. Between 2016 and 2020, CCFD hired approximately 225 White firefighters, and hired 61 African-American firefighters. Of these 286 hires, 78.7% are White and only 21.9% are African American.

B.   *The Challenged Employment Practices*

   i.   CCFD's Use of the ACCUPLACER Written Exam

16. In 2020, CCFD began using the ACCUPLACER exam, a written examination developed by the Technical College System of Georgia, as part of its hiring process. Upon information and belief, CCFD administers the ACCUPLACER exam at least once every six months to firefighter candidates seeking a firefighter position.

17. The ACCUPLACER was developed by the Technical College System of Georgia to identify the appropriate course level for college students. It was not created to screen candidates for a firefighter position. Documentation related to the ACCUPLACER's ability to place students in course levels for their respective ability levels contains no information that performance on the test approximates the tasks performed as a CCFD firefighter or that performance on the test correlates with performance on the job as a firefighter or in the academy.

18. The ACCUPLACER exam consists of three sections: (1) Reading; (2) Writing; and (3) Mathematics. Candidates can receive up to 300 points on each subsection.

19. Candidates must pass each of the three sections of the exam. To pass the exam, a candidate must achieve a score of 224 points on the Reading section, a score of 236 on the Writing section, and a score of 229 on the Mathematics section.

20. Candidates who pass the written exam are eligible to take the physical agility test ("PAT").

    ii. Rank-Order Use of ACCUPLACER Written Exam Scores in 2020

21. During its first hiring process with the ACCUPLACER exam in 2020, CCFD placed all candidates who passed the ACCUPLACER and the PAT on an eligibility list in order of their overall ACCUPLACER score, with additional points available to candidates with an honorary military discharge, certain educational achievements, and valid firefighter and EMT certifications. CCFD then invited the highest-scoring/top-ranked candidates to move forward in the hiring process.

22. While the majority of individuals who took the ACCUPLACER exam in 2020 passed it, many candidates ranked too low on the eligibility list based on their scores to have a chance to be hired.

23. African-American candidates had lower average ranks on the 2020 eligibility list than White candidates. The disparity in the average ranks is statistically significant, and the difference is greater than 2 to 3 units of standard deviation.

24. Considering only those candidates on the eligibility list who not only passed the ACCUPLACER written exam but also scored high enough to be reached for further processing (i.e., scored at least as high as the last candidate reached on the eligibility list for further processing) as having effectively passed the ACCUPLACER exam, African-American candidates in 2020 had a lower effective passing rate than White candidates. The disparity between the effective pass rate for African-American candidates and White candidates was statistically significant, and the difference is greater than 2 to 3 units of standard deviation.

25. While approximately 319 White candidates and 249 African-American candidates passed the 2020 ACCUPLACER exam, none of the 21 candidates ultimately selected for the academy are African American, while 20 of the 21 selected candidates are White.

26. Beginning in early 2021, CCFD no longer ranked candidates based on total ACCUPLACER score. Instead, CCFD randomly selected 50 candidates who passed both the ACCUPLACER and the PAT to move forward in the hiring process using a computer program that sets a list of items in random order (known as a "randomizer").

27. Using the randomizer resulted in a commensurate number of African Americans being chosen to move forward in the process as those who had applied for the position.

   iii.  <u>CCFD's Use of a Credit Check as Part of Its Selection Process</u>

  28. Since at least 2016, Cobb County has used a credit check in its hiring process for firefighter positions at CCFD.

  29. From at least 2016 to 2020, candidates for appointment to CCFD firefighter positions had to pass the credit check portion of the selection process to be hired.  CCFD developed the criteria used to determine which candidates pass the credit check.

  30. From at least 2016 to 2020, African-American candidates passed the credit check at a lower rate than White candidates. The difference between the pass rates of White and African-American candidates on the credit check is statistically significant, and the difference is greater than 2 to 3 units of standard deviation.

  31. Based on information and belief, Cobb County has not engaged in any study that establishes a connection between credit history and job performance or character.

**UNITED STATES' PATTERN OR PRACTICE CLAIMS**

<u>COUNT I</u>
<u>Title VII, 42 U.S.C. § 2000e-2(a)</u>
<u>Rank-Order Use of the ACCUPLACER Written Exam Scores</u>

  32. Plaintiff United States re-alleges and incorporates herein by reference paragraphs 1-31.

33. Cobb County's use of the ACCUPLACER exam in 2020 as a rank-order screening device resulted in a disparate impact on African-American candidates for firefighter positions at CCFD, is not job-related for the position in question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

34. As a result of its rank-order use of the ACCUPLACER exam, CCFD hired fewer African-American candidates as CCFD firefighters than it would have had it used a non-discriminatory screening device.

35. The Attorney General has reasonable cause to believe that Cobb County has engaged in a pattern or practice of discrimination against African-American firefighter candidates in violation of Title VII, 42 U.S.C. § 2000e-2(a). The policies and practices of Cobb County outlined in paragraphs 16 through 27 constitute a pattern or practice of resistance to the full enjoyment by African Americans of the rights protected by Title VII.  Under Section 707 of 42 U.S.C. § 2000e-6(a), the United States brings a civil action requesting relief.

COUNT II
Title VII, 42 U.S.C. § 2000e-2(a)
Use of the Credit Check

36. Cobb County's use of a credit check as a screening device from at least 2016 to 2020 has resulted in a disparate impact on African-American candidates for firefighter positions at CCFD, is not job-related for the position in

question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

37. As a result of its credit check, CCFD has hired fewer African-American candidates as CCFD firefighters than it would have had it used a non-discriminatory screening device.

38. The Attorney General has reasonable cause to believe that Cobb County has engaged in a pattern or practice of discrimination against African-American firefighter candidates in violation of Title VII, 42 U.S.C. § 2000e-2(a). The policies and practices of Cobb County outlined in paragraphs 28 through 31 constitute a pattern or practice of resistance to the full enjoyment by African Americans of the rights protected by Title VII.  Under Section 707 of 42 U.S.C. § 2000e-6(a), the United States brings a civil action requesting relief.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court order Defendant Cobb County, and its officers, agents, employees, successors, and all persons in active concert or participation with them, to:

    a. refrain from using written examinations and credit checks to screen and select candidates for CCFD firefighter positions where such use results in a disparate impact on African Americans, is not job-related for the position in question and consistent with business

necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

b. provide make whole remedial relief to all persons who have suffered individual loss as a result of the discrimination alleged in this Complaint; and

c. adopt other appropriate nondiscriminatory measures to correct the present effects of its discriminatory policies and practices, including the use of firefighter selection procedures that comply with Title VII.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Dated: May 8, 2024

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

/s/ Aileen Bell Hughes
Aileen Bell Hughes
Georgia Bar No. 375505
Deputy Chief
Public Integrity & Civil Rights Section
Office of the United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division

| | |
|---|---|
| 600 U.S. Courthouse<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303<br>Phone: (404) 581-6000<br>Fax: (404) 581-6181<br>aileen.bell.hughes@usdoj.gov | */s/ Clare Geller*<br>CLARE GELLER (NY Reg. No. 4087037)<br>Deputy Chief<br><br>By: */s/ Brian McEntire*<br>Brian G. McEntire (VA Bar 48552)<br>Juliet E. Gray (DC Bar No. 985608)<br>Senior Trial Attorneys<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br>4 Constitution Square<br>150 M Street, N.E./Room Number 9.1128<br>Washington, D.C. 20002<br>(202) 598-9907<br>brian.mcentire@usdoj.gov<br>juliet.gray@usdoj.gov |