**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____
                                )
UNITED STATES OF AMERICA,        )
                                )
            Plaintiff,           )
                                )
        v.                       )    Civ. No. 1:24-cv-02010-WMR-JEM
                                )
COBB COUNTY, GEORGIA,            )
                                )
            Defendant.           )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF
THE PARTIES' JOINT MOTION FOR PROVISIONAL ENTRY OF
CONSENT DECREE AND SCHEDULING A FAIRNESS HEARING ON
<u>THE TERMS OF THE CONSENT DECREE</u>**

## I.   <u>INTRODUCTION</u>

Plaintiff United States of America ("United States") and Defendant Cobb County, Georgia ("Defendant") (collectively, the "Parties") submit this Memorandum of Law in Support of the Parties' Joint Motion for Provisional Entry of the Consent Decree and Scheduling a Fairness Hearing on the Terms of the Consent Decree ("Joint Motion"). The Parties request that the Court provisionally enter the Consent Decree ("Decree") filed with the Joint Motion as Exhibit A, schedule a Fairness Hearing on the Terms of the Consent Decree, and stay all

1

deadlines pending the Court's determination as to whether to enter the Decree as a final order.[1]

As set forth below, the Court should provisionally enter the Decree because its terms are fair, reasonable, and adequate. If approved and entered by the Court, the Decree will resolve the United States' claims in this action, alleging that the Defendant, through the Cobb County Fire Department ("CCFD"), used certain screening devices to select candidates for firefighter positions that had an impermissible disparate impact on African-American applicants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Provisional entry of the Decree will enable the Parties to initiate the Decree's provisions for providing notice to interested parties.  The Decree provides for the Court to hold a fairness hearing on the proposed Decree to provide persons affected by its provisions an opportunity to be heard on their interests and determine whether to enter the Decree as a final order.

## II.   <u>**BACKGROUND**</u>

The United States filed this civil action against Defendant pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6.  The United States' complaint alleges that Defendant, through CCFD, engaged in a pattern or practice of

---

[1] This memorandum incorporates by reference the definitions set forth in the Decree.

unintentional discrimination in CCFD's firefighter hiring process in violation of Title VII.  No allegation is made that CCFD intentionally discriminated against African-American applicants based upon their race.  Specifically, the complaint alleges that CCFD's use of the ACCUPLACER written exam in 2020 as a rank-order selection device and its use of a credit check to screen out firefighter candidates from 2016 to 2020 resulted in an impermissible disparate impact against African-American firefighter candidates and resulted in fewer African Americans being hired as CCFD firefighters.  In addition, the United States alleges that these hiring practices were not job related and consistent with business necessity. Defendant denies the allegations as to impermissible disparate impact or that it has violated the law in any way.

After extensive settlement negotiations lasting over one year, the Parties reached a settlement culminating in the proposed Decree.  The Parties respectfully request that the Court provisionally enter the proposed Decree and schedule the Fairness Hearing on the Terms of the Consent Decree no less than 120 days from the date of the Court's Order in the Joint Motion.  During those 120 days, the Parties will provide the individuals who may be impacted by the Decree with notice and opportunity to object to the terms of the Decree, and the Parties will address any timely objections prior to this first fairness hearing. The Court will have the opportunity to consider and resolve any objections at this fairness hearing.

III.   **SUMMARY OF THE PROPOSED CONSENT DECREE**

The Decree provides for both individual and injunctive relief that will be provided in resolution of this case.  Below is an overview of the central provisions of the Decree.

### A. Individual Relief

The Decree provides for a total of $750,000 in back pay monetary relief to be distributed among eligible Claimants. Ex. A ¶ 31.  Class Members potentially eligible for back pay relief are African-American CCFD firefighter applicants who either: (1) passed the ACCUPLACER examination in 2020 and scored below 89.22 percent (the lowest score of a candidate hired); or (2) were removed from the firefighter hiring process solely due to the credit check between 2016 and 2020. *Id.* ¶ 38.  The amount of back pay relief that an individual Claimant receives will not exceed full make-whole monetary relief and will be determined by the United States, subject to final approval of the Court.  *Id.* ¶ 31.

The Decree also provides for up to 16 priority hires to the firefighter position from Claimants eligible for a priority hire.  *Id.* ¶ 32.  Up to ten of these priority hires will come from the pool of individuals who were disqualified from consideration based on their credit histories, and up to six priority hires will come from the pool of individuals who were disqualified by the rank-order use of their 2020 ACCUPLACER exam passing score.  *Id.*  Individuals selected for priority

4

hire positions are also entitled to certain components of retroactive seniority; this means using a retroactive seniority date (the date an individual would have started at CCFD Fire Academy absent the challenged disqualifying practice) for purposes of calculating the individual's regular rate of pay, accrual of annual leave and any other leave accrued based on seniority, determining the order for layoffs/reductions in work force, and determining the order for recalling firefighters from layoffs/reductions in work force. *Id.* ¶¶ 12-13, 73. Priority hires must meet the requirements for being a Claimant, all of the minimum qualifications for hire in effect at the time of their hire, and complete all steps in the firefighter hiring process, with the exception that an individual need not re-take the ACCUPLACER exam if he or she took and received a passing score on the exam within four (4) years of the date the Claimant would be required to re-take the exam. *Id.* ¶¶ 38, 40.

### B. Injunctive Relief

The Decree also provides for injunctive relief. First, Defendant, who has not used the credit check to disqualify a firefighter applicant since 2020, will not resume using a credit check as part of its firefighter selection process, nor shall it obtain or in any way consider the credit history of a firefighter applicant. *Id.* ¶ 26. Second, in the event that the County wishes to change or modify its current pass-fail use of the ACCUPLACER exam, it will provide any such proposed changes or modifications to the United States for its review and approval at least 90 days in

advance of the proposed modification or change.  *Id.* ¶ 28.  Third, the Decree

prohibits retaliation by Defendant against any individual who takes advantage of

rights provided by the Decree or has testified, assisted, or participated in any

manner in any investigation, proceeding, or hearing related to the implementation

of the Decree.  *Id.* ¶ 27.  Fourth, the Decree requires the County to designate a

Decree Compliance Officer who will provide to the United States bi-annual reports

regarding the status of Defendant's implementation of the Decree.  *Id.* ¶ 29.

### C. Continuing Jurisdiction

The proposed Decree reflects the Parties' agreement to entry of its terms as

an order of the Court, with the Court retaining jurisdiction over this matter for the

duration of the Decree.  *Id.* ¶ 90.  Unless extended for good cause, the Decree will

be dissolved without further Court Order either three years from the date of final

approval of the Decree or six months after the last priority hire begins the CCFD

Fire Academy, whichever is later.  *Id.*

"Continuing jurisdiction is the norm (and often the motivation) for consent

decrees."  *EEOC v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1173 (8th Cir. 2012)

(citing *Local No. 93, Int'l Assoc. of Firefighters v. Cleveland*, 478 U.S. 501, 524

n.13 (1986)).  District courts should consider "the strong preference for settlement

agreements as a means of protecting the federal interest in employment

discrimination cases" and "the fact that continuing jurisdiction is a usual

component of such agreements, in part due to its deterrent effect." *Id.* at 1174. This deterrent effect of continuing jurisdiction is a critical tool for furthering the public interest, and the United States believes that the Court's exercise of continuing jurisdiction is warranted in this case to protect the public interest.

## IV.   <u>APPROVAL PROCESS OF THE CONSENT DECREE</u>

The Decree, if provisionally approved, sets forth the schedule for notice and two fairness hearings—the Fairness Hearing on the Terms of the Consent Decree and the Fairness Hearing on Individual Relief.

### A. Fairness Hearing on the Terms of the Consent Decree

The Parties request that the Court schedule a Fairness Hearing on the Terms of the Consent Decree to determine whether the terms of the Decree are fair, adequate, and reasonable.  Ex. A ¶ 14.  To allow sufficient time for notice to affected individuals as well as objections and responses, the Parties request that the hearing be scheduled for a date that is at least 120 days after the date the Court provisionally approves the Decree.  *Id.* ¶ 15.

During that 120-day period, the United States, through a Claims Administrator,[2] will provide notice of the fairness hearing, the Decree, and the opportunity to submit written objections to all known individuals who may be

---

[2] Under the Decree, the United States shall retain a Claims Administrator for the claims administration process.  *Id.* ¶ 17.

eligible to receive relief under the Decree. *Id.* ¶ 19. Notice will also be posted on bulletin boards in CCFD stations and on CCFD's intranet and published in a local publication to alert interested parties of the fairness hearing and the opportunity to object. *Id.* ¶¶ 20-21. Prior to the fairness hearing, the United States will file with the Court copies of all objections received, and the Parties will file their responses, if any, to each timely objection. *Id.* ¶ 23.

The purpose of this fairness hearing would be for the Court to determine whether the Decree is fair, reasonable, and adequate. *United States v. City of New Orleans*, 947 F. Supp. 2d 601, 619 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013). As such, the "first place a court should look [in making a determination] is to the views" of those whose interests may be impacted by the Decree. *Shuford v. Ala. State Bd. of Educ.*, 846 F. Supp. 1511, 1517 (M.D. Ala. 1994). Courts must ensure "as a threshold matter that notice and fairness hearings [are] adequate to inform the class about the provisions of [a] decree and to solicit and determine their views." *Id.* Courts have found notice and fairness hearings to be sufficient where potential claimants are informed of the terms and potential effect of proposed settlements on their interests, the time and place of fairness hearings, and the opportunity for objecting to consent decrees. *See Shuford v. Ala. State Bd. of Educ.*, 897 F. Supp. 1535, 1548 (M.D. Ala. 1995); *Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2013 WL 12481985, at *1 (W.D. Okla. Apr. 2, 2013). Here, if the Court finds that

8

the Decree is fair, adequate, and reasonable, it shall approve and enter the Decree at or after the Fairness Hearing.  *Id.* ¶ 24.

The timeline of actions related to the Fairness Hearing on the Terms of the Consent Decree are as follows:

- Fairness Hearing on the Terms of the Consent Decree Terms:  At least **120 days** after the Court provisionally enters the Decree.  *Id.* ¶ 15.

- No later than **15 days** after the execution of the Consent Decree, the Defendant provides a list of names of all Class Members, including last known mailing address and email address.  *Id.* ¶ 18.

- No later than **90 days** before the Fairness Hearing on the Terms of the Consent Decree: The Claims Administrator shall provide a copy of a Notice of Settlement and Fairness Hearing on the Terms of the Decree, Instructions for Filing an Objection, and a blank Objection form to Class Members.  *Id.* ¶ 19.  By this same date, Defendant will post a Notice of Settlement and the Fairness Hearing on the Terms of the Decree on bulletin boards at CCFD stations and on CCFD's intranet.  *Id.* ¶ 20.

- No later than **30 days** before the Fairness Hearing on the Terms of the Consent Decree: Deadline for mailing or emailing objections to

the Claims Administrator.  *Id.* ¶ 22.  The United States will promptly provide the objections to the Defendant on a rolling basis.  *Id.*

- No later than **10 days** before the Fairness Hearing on the Terms of the Consent Decree: the United States shall file with the Court copies of all objections received, and the Parties shall file their responses to timely objections.  *Id.* ¶ 23.

- During or after the Fairness Hearing on the Terms of the Consent Decree: the Court shall enter the Decree.  *Id.* ¶ 24.

**B. Fairness Hearing on Individual Relief**

The Court's approval of the Decree at or after the initial fairness hearing triggers a multi-step claims process for determining eligibility for individual relief in the form of monetary relief and/or a priority hire to the position of CCFD firefighter.  In summary, Class Members interested in obtaining relief would submit an Interest-in-Relief Form.  *Id.* ¶ 35.  The United States, in collaboration with the Claims Administrator, would review these submissions, make eligibility and propose individual relief determinations, issue notice of the determinations, and provide an opportunity for the Defendant and interested persons to object to those determinations.  *Id.* ¶¶ 37, 41-51.  At or after the Fairness Hearing on Individual Relief, the Court shall rule on objections and either approve as final the

United States' proposed distribution of individual relief, or, if necessary, direct the Parties to make adjustments to the proposed individual relief determinations consistent with the Court's ruling on any objections it deems well-founded.  *Id.* ¶¶ 52, 54.

The timeline of actions related to the Fairness Hearing on Individual Relief are:

- **30 days** after final approval of the Decree: The Claims Administrator will send via email (if known) and first-class mail the Notice of Final Approval of Settlement and an Interest-in-Relief Form to all Class Members.  *Id.* ¶ 33.  No later than **30 days** after the Claims Administrator mails the Notice of Final Approval of Settlement and an Interest-in-Relief Form: Class Members return the Interest-in-Relief Form.  Class Members who return this form are reclassified as Claimants.  *Id.* ¶ 35.

- No later than **90 days** after final approval of the Decree: The United States provides Defendant with its initial list of determinations on individual relief.  *Id.* ¶ 41.  Defendant will notify the United States within 15 days of receipt of this list whether it has any objections regarding any of the United States' determinations.  *Id.* ¶ 42.  The parties will work through any

11

objections made.  Once the Parties have resolved any issues and/or there no objections, the United States' will create a Final List of Determinations.  *Id.* ¶ 43.

- No later than **180 days** after final approval of the Decree: The United States shall file the Final List of Determinations with the Court[3] and simultaneously move the Court to schedule a Fairness Hearing on Individual Relief and to provide the Parties at least 90 days' notice of the hearing.  *Id.* ¶¶ 44-45.

- **90 days** before the Fairness Hearing on Individual Relief: The Court shall provide notice of the date and time set for the hearing.  *Id.* ¶ 45.

- **80 days** before the Fairness Hearing on Individual Relief: The Claims Administrator will send notice of the hearing to all Claimants who submitted Interest-in-Relief Forms as well as a cover letter relating to individual relief determinations, instructions for objections, and an objection form.  *Id.* ¶ 46.

- **50 days** before the Fairness Hearing on Individual Relief: Deadline for Claimants to submit objections to individual relief.  *Id.* ¶ 48.

---

[3] All Claimants' names and personally identifying information shall be redacted from the Final List of Determinations and will be identified by a Claimant ID number.  Ex. A ¶ 44.

- **45 days** before the Fairness Hearing on Individual Relief: The United States will serve on Defendant copies of all objections and will serve further objections on a rolling weekly basis. *Id.* ¶ 49.

- **10 days** before the Fairness Hearing on Individual Relief:  The United States shall file with the Court copies of all objections received and the Parties' responses to timely objections. *Id.* ¶¶ 50-51.

- Date/Time to be determined by the Court: Fairness Hearing on Individual Relief will be held.

- During or after the Fairness Hearing on Individual Relief, the Court shall approve as final the Final List of Determinations. *Id.* ¶ 54.  If the Court determines that adjustments to the Final List of Determinations are necessary, the Parties will make necessary adjustments to the Final List of Determinations before receiving Court approval. *Id.* ¶ 52.

## V.  <u>ARGUMENT</u>

### A. Standard of Review

Under long-established precedent, the Court should enter the Decree in this case if the settlement is "fair, adequate and reasonable."  *Greco v. Ginn Dev. Co., LLC,* 635 F. App'x 628, 632 (11th Cir. 2015) (citing *Cotton v. Hinton*, 559 F.2d

13

1326, 1330 (5th Cir. 1977)); *see also In re Motorsports Merch. Antitrust Litig.*, 112

F.Supp.2d 1329, 1333 (N.D. Ga. 2000).  Consent decrees negotiated between the

federal government and representatives of a local government to settle a pattern or

practice case of employment discrimination by the local government should be

given a presumption of validity by the Court, and the Court only needs to

determine that the consent decree "is not unconstitutional, unlawful, contrary to

public policy, or unreasonable before approval is granted."  *United States v. City of*

*Miami*, 614 F.2d 1322, 1332-33 (5th Cir. 1980) (internal citation omitted).

When assessing whether a proposed consent decree is fair, adequate, and

reasonable, the Eleventh Circuit considers: (1) the existence of fraud or collusion

behind the settlement; (2) the complexity, expense, and likely duration of the

litigation; (3) the stage of the proceedings at which settlement was reached; (4) the

likelihood of success at trial; (5) the range of possible recovery; and (6) the

opinions of the class counsel, class representatives, and the substance and amount

of opposition to the settlement.  *See Leverso v. SouthTrust Bank of AL., Nat.*

*Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Bennett v. Behring Corp.*, 737

F.2d 982, 986 (11th Cir. 1984); *In re Motorsports*, 112 F.Supp.2d at 1333.

Congress has placed a high premium on voluntary settlements of Title VII

suits.  *United States v. City of Miami*, 664 F.2d 435, 442 (5th Cir. 1981) (*en banc*).

"Cooperation and voluntary compliance were selected as the preferred means of

achieving" the goal of eliminating employment discrimination. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Accordingly, a district court should have a "deferential attitude towards agreements reached by consent in Title VII suits." *City of Miami*, 614 F.2d at 1332-33.

### B. The Decree Is Fair, Adequate, Reasonable, and Consistent with Federal Law.

Measured by the applicable factors, as discussed in more detail below, the proposed Decree is fair, reasonable, and adequate in addressing allegations of disparate impact discrimination in the CCFD firefighter hiring process. *See* Ex. A, Introduction. Both the individual relief and injunctive relief terms of the Parties' proposed decree are clear, well-defined, and tailored to address and prevent future violations of Title VII.

> 1. There is no fraud or collusion behind the Decree; it is the product of fair, arms-length negotiations.

The Decree is the product of over one year of extensive discussions and arms-length negotiations between the Parties. Plaintiff is represented by the United States Department of Justice, a government agency entrusted with enforcing Title VII in the public interest, as opposed to a party with a pecuniary interest. *See City of Miami*, 614 F.2d at 1332 ("Unlike the situations in which we fear that a party may be attempting the profit at the expense of unrepresented individuals . . . plaintiff (is) the government department charged with seeing that

15

the laws are enforced.").  Defendant is represented by experienced counsel.

Additionally, the Decree was approved by the Cobb County Board of

Commissioners after the Decree was made available for public comment.  These

facts weigh in favor of approval, as they evidence the absence of possible collusion

or fraud.

>  2.  <u>The complexity, expense, and likely duration of litigation support approval of the Decree.</u>

Approval of this consent decree avoids costly, protracted litigation.  The

United States would be prepared to present evidence and argument in support of its

claims. Defendant denies the allegations as to unlawful disparate impact, and

would be prepared to assert multiple defenses to both liability and damages in

response to the United States's claims.  Title VII disparate impact cases that

challenge employee-hiring processes are complex, expensive, and time-consuming

and typically involve experts in the fields of statistics and industrial-organizational

psychology.  Cases challenging just one selection device span years, with

proceedings often bifurcated into separate trials on liability and damages.  This

case would be particularly labor-intensive because the United States has

challenged two separate selection devices within the CCFD firefighter hiring

process: the rank-order use of the written examination and the credit check.  If not

settled, this litigation would likely continue for several years at substantial costs,

including significant expert work, and risks to the Parties.  Settlement avoids these costs and risks.

### 3.  The stage of proceedings supports approval of the Decree.

The United States commenced its investigation of Cobb County in late 2019. The parties have spent over four years exchanging information and analyses as well as engaging in discussions about the factual and legal issues that ultimately formed the basis of the United States' complaint.  At this stage of the proceedings, each party is thoroughly aware of the strengths and weaknesses of its evidence, arguments, and assertions, having evaluated the statistical evidence and other factual information to determine the benefits and risks of settlement versus trial. The existence of this information favors approval of the Decree.

### 4.  Likelihood of success at trial.

Each side believes that it was positioned to prevail at trial absent settlement, and each side also recognizes that there was risk associated with trial given the evidence each side was prepared to present.

The United States would have presented evidence that the selection devices at issue resulted in disparate impact against African-American candidates and were not job related and consistent with business necessity.  Defendant was prepared to present evidence that these selection devices were job related and consistent with business necessity.  If the Court found that the challenged selection devices were

valid, the United States was prepared to present evidence that an alternative employment practice with less adverse impact was available to the Defendant and would have met its legitimate business needs.

5. <u>The settlement is within the range of recovery.</u>

The individual and injunctive relief required under the Decree is appropriate under Title VII and is within the range of the potential recovery had this matter been litigated to conclusion.  Therefore, the relief is a reasonable compromise of the United States' claims.

*a.  The individual relief in the Decree is appropriate.*

One of the central purposes of Title VII is to make whole persons who have been harmed by employment practices that violate the statute.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (citing 118 Cong. Rec. 7168 (1972)). Accordingly, a court may fashion relief "as may be appropriate, which may include . . . hiring of employees," as well as monetary and other equitable relief as the court deems appropriate.  *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (quoting Section 706(g) of Title VII, 42 U.S.C. § 2000-e5(g)); *Crabtree v. Baptist Hosp. of Gadsden, Inc.*, 749 F.2d 1501, 1502 (11th Cir. 1985) (stating that Title VII authorizes back pay).  In Title VII pattern or practice cases, the goal is to place affected individuals at, or as near as possible to, the situation they would

18

have been in but for the challenged practices.  *Albemarle*, 422 U.S. at 418-19

(citation omitted).

Here, the individual relief provided in the Decree is consistent with the

make-whole relief authorized by Title VII.  Individuals affected by the Defendant's

challenged practices are eligible for monetary payments and the opportunity to

compete for a priority hire position with certain components of retroactive

seniority.  The monetary relief of $750,000 is substantial and will provide

Claimants with some measure of financial restitution, even though it is less than

what could be recovered were the United States to prevail at trial.  Moreover, the

method for apportioning the monetary relief and requirements in the Decree ensure

that no Claimant receives back pay in excess of the Claimant's make whole relief.

Ex. A ¶ 31.  The Decree also provides that Defendant will create up to 16 priority

hire positions for eligible Claimants.  The number of priority hires is not higher

than the estimated hiring shortfall caused by the challenged employment practices.

The relief is limited to those affected by the Defendant's hiring practices—those

who either passed the ACCUPLACER examination in 2020 and were not hired

because of the rank-order use of this exam or were removed from the firefighter

hiring process due to the credit check.

*b. The injunctive relief in the Decree is appropriate.*

Prospective injunctive relief is justified in Title VII pattern or practice cases. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977).  Here, in the interest of avoiding contested litigation, the Parties reached an agreement on injunctive relief designed to ensure that the CCFD firefighter hiring process complies with Title VII.  The Decree prohibits Defendant from resuming use of a credit check and prohibits Defendant from obtaining credit histories of applicants; requires approval from the United States regarding any changes to the use of the ACCUPLACER exam; prohibits retaliation by Defendant; and establishes a Decree Compliance Officer who will provide bi-annual reports to the United States.  This relief is lawful, fair, reasonable, and adequate.  *Johnson v. Montgomery Cnty. Sheriff's Dept.*, 604 F.Supp. 1346, 1348 (M.D. Ala. 1985).

6. <u>The Decree is supported by experienced counsel.</u>

The United States is empowered by Congress to enforce Title VII.  It does so through attorneys highly experienced in litigating and resolving Title VII claims such as the case before the Court.  Defendants are represented by private and in-house counsel with significant experience in complex litigation and settlement negotiations and who are well suited to evaluate the risks associated with trial of this case and to balance those risks against the terms of the Decree.  These attorneys have spent more than a year negotiating a fair Decree.  Given the

20

expertise and experience of all counsel and their agreement that the Decree is an

appropriate compromise, "the district court may rely on the judgment of

experienced counsel for the parties. *Nelson v. Mead Johnson & Johnson Co.*, 484

F. App'x 429, 434 (11th Cir. 2012).  Accordingly, counsels' expertise and

endorsement of the Decree  weighs in favor of provisional entry of the Decree.

## VI.    **CONCLUSION**

For the above reasons, the Parties respectfully request that the Court

provisionally enter the proposed Decree, set the time, date, and location of the

Fairness Hearing on the Terms of the Consent Decree, and stay all deadlines

pending the Court's determination as to whether to enter the Decree as a final

order.


Date: May 9, 2024


Respectfully submitted,

For Plaintiff United States of America:

By:

RYAN K. BUCHANAN                          KRISTEN CLARKE
United States Attorney                    Assistant Attorney General
Northern District of Georgia              Civil Rights Division

*/s/ Aileen Bell Hughes*                  KAREN D. WOODARD
AILEEN BELL HUGHES                        *Chief*

Georgia Bar No. 375505
Deputy Chief
Public Integrity & Civil Rights Section
Office of the United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181
aileen.bell.hughes@usdoj.gov

*Employment Litigation Section*

CLARE GELLER (NY Reg. No.
4087037)
*Deputy Chief*

*/s/ Brian G. McEntire*
BRIAN G. MCENTIRE (VA Bar
#48552)
JULIET E. GRAY (DC Bar #985608)
*Senior Trial Attorneys*
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E., Room 9.1802
Washington, DC 20530
Phone: (202) 598-9907
Fax: (202) 514-1005
brian.mcentire@usdoj.gov
juliet.gray@usdoj.gov

For Defendant Cobb County Georgia:

By:

*/s/ H. William Rowling, Jr.*
H. WILLIAM ROWLING, JR.
County Attorney
State Bar No. 617225
LAUREN S. BRUCE
Assistant County Attorney
State Bar No. 796642
MARK A. ADELMAN
Senior Associate County Attorney
State Bar No. 044788
Cobb County Attorney's Office
100 Cherokee Street, Suite 350
Marietta, GA 30090
Phone: (770) 528-4007
lauren.bruce@cobbcounty.org
mark.adelman@cobbcounty.org

22

*/s/ Matthew A. Boyd*
MATTHEW A. BOYD
State Bar No. 027645
Tucker Ellis LLP
(Atlanta Financial Center)
3343 Peachtree Road NE, Suite 145-1574
Atlanta, Georgia 30326
Phone: (404) 678-6365
matthew.boyd@tuckerellis.com