IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CIVIL ACTION<br>NO. 1:24-cv-02010-WMR |
| COBB COUNTY, GEORGIA, | |
| Defendant. | |

### ORDER

This matter is before the Court on the parties' Joint Motion for Final Approval of Amended Consent Decree in a Title VII (disparate impact) action seeking remedial and injunctive relief, as well as monetary damages. [Doc. 5]. After careful consideration of the applicable law and the record, the Court DENIES the motion for the reasons set forth below.

**I. Background**

Between 2016 and 2020, the Cobb County Fire Department ("CCFD") used a ACCUPLACER written examination and a credit check to screen and select

candidates for firefighter positions at the CCFD. After 2020, however, the CCFD no longer used a credit check as part of its hiring or selection process.[1]

Several years later, in May of 2024, Plaintiff filed this action against Defendant to enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* In its Complaint, Plaintiff alleges that Defendant's use of the written examination and its prior use of a credit check between 2016 and 2020 to screen and select candidates for firefighter positions had an impermissible disparate impact on African-American candidates in violation of Title VII. Defendant denies that its hiring or selection process had any impermissible disparate impact based on race or that it has violated the law in any way.

Nevertheless, before the Complaint was even filed, the parties negotiated a proposed resolution to this dispute (Amended Consent Decree), without any admission of liability by Defendant. The Amended Consent Decree is before the Court for final approval. [*See* Doc. 5; Doc. 5-1]. The major components of relief in the proposed Amended Consent Decree include: (1) injunctive relief and oversight to ensure that CCFD maintains a Title VII-compliant hiring process; (2) $750,000 in monetary relief to be distributed among eligible African-American claimants; and (3) up to 16 priority hire positions, with certain components of retroactive seniority

---

[1] CCFD seemingly still uses the written exam to screen applicants, but no longer ranks candidates based on their test score, essentially converting it to a pass-fail test.

for qualified African-American applicants who were affected by the alleged improper employment practices. [*See* Doc. 5-3].

## II. Discussion

At the outset, the Court notes that the relief proposed by the parties is arguably a form of intentional discrimination based on race — only those claimants who are African-American are entitled to seek relief. Further, the proposed relief would allow for disparate treatment because it provides for priority hiring of the affected African-American claimants over other applicants, as well as retroactive seniority and possible promotions over other employees who may have been hired before the African-American claimants. Plaintiff's position, of course, is that African-American applicants were disparately impacted by Defendant's illegal hiring and selection process and that such relief is merely remedial in nature.[2]

However, under Title VII, before an employer can engage in (or agree to) intentional discrimination for the asserted purpose of remedying an (alleged) unintentional disparate impact, the employer must have a "strong basis in evidence" to believe it is or will be liable if it fails to engage or participate in the race-conscious, discriminatory action. *See Ricci v. DeStefano*, 557 U.S. 557, 581–85 (2009). But

---

[2] While this Court is bound by precedent from the Supreme Court on disparate impact discrimination, one might wonder if such decisions remain the prevailing view of the current Justices. There is scholarly debate whether it is constitutional for federal law to prohibit practices or policies which are race neutral on their face if there is a disparate impact, especially when there was no discriminatory intent.

here, Defendant has steadfastly denied that its hiring or selection process had any impermissible disparate impact based on race or that it has violated the law in any way. Furthermore, the Court at this time is unable to opine as to whether the written examinations or credit inquiries at issue were helpful or necessary to some degree in determining the applicants' fitness for firefighter positions. This point has not even been litigated, only conceded without prejudice. Thus, it does not appear that there is a clear showing of "strong basis in evidence" to justify the approval of the relief agreed upon by the parties, at least at this stage of the litigation.

The foundational prohibition of Title VII bars employers from taking any adverse action "because of race." 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court has aptly noted, "[t]he purpose of Title VII 'is to promote hiring on the basis of job qualifications, rather than on the basis of race or color,'" and "[a]llowing employers to violate the disparate-treatment prohibition based on a mere…fear of disparate-impact liability would encourage race-based action at the slightest hint of disparate impact." *Ricci*, 557 U.S. at 581–82. Yet, in submitting the Amended Consent Decree to this Court for approval, the parties are essentially asking this Court to approve of Defendant's agreement to intentionally discriminate in the future for the asserted purpose of remedying an alleged disparate impact, without a clear and tested evidentiary basis or good-faith belief on the part of Defendant that such a remedy is warranted. While Plaintiff may eventually be able to convince the Court that its

4

Title VII (disparate impact) claim has merit, the Court will not approve of an agreement which may violate the rights of others without a sufficient evidentiary basis to show that such race-based action is warranted.[3]

### III. Conclusion

For the above reasons, it is hereby **ORDERED** that the parties' Joint Motion for Final Approval of Amended Consent Decree [Doc. 5] is **DENIED**.

IT IS SO ORDERED, this 16th day of January, 2025.

*/s/ William M. Ray II*
_____
WILLIAM M. RAY, II
United States District Court Judge
Northern District of Georgia

---

[3] If this case does move forward in the new administration of President Trump, the Court may utilize Rule 706 to appoint an expert witness on this issue and/or appoint a special advocate to represent Defendant's position that it has done nothing wrong. This step seems justified in that the Defendant so easily agreed to this settlement. One or both parties will be responsible for the cost of any expert or special advocate appointed.